**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| BRITTANY BLACK, PRESTON OWENS, and RACHEL WRIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BO LUCKEY, in his official capacity as Chief of the Capitol Police, a unit of the Mississippi Department of Public Safety; and SEAN TINDELL, in his official capacity as Commissioner of the Mississippi Department of Public Safety,<br><br>Defendants. | Case No. 3:26-CV-377-DPJ-MTP<br><br>Class Action<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

A. Rule 23(a)(1): Joinder is impracticable. ..... 1

B. Rule 23(a)(2): The proposed class shares common questions of law and fact. ..... 4

C. Rule 23(a)(3): Plaintiffs' claims are typical of the Class. ..... 7

D. Rule 23(a)(4): Plaintiffs will adequately represent the Class. ..... 10

E. Rule 23(b)(2): Defendants act uniformly toward members of the proposed Class, and declaratory and injunctive relief on behalf of the Class is appropriate. ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727 (5th Cir. 2023) ..................................... 7, 8, 9

*Antrim v. Carr*, No. 19-CV-0396, 2023 WL 8627789 (E.D. Wis. Dec. 13, 2023)........................ 5

*Bradford v. Sears, Roebuck and Co.*, 673 F.2d 792 (5th Cir. 1982)............................................. 4

*Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608 (5th Cir. 1983) ................................. 12

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) .............................. 10, 12, 14

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) .................................................. 11

*Gardner v. Westinghouse Broad Co.*, 437 U.S. 478 (1978) ......................................................... 4

*Hamm v. Ochsner-Acadia, L.L.C.*, No. 25-30603, --- F.4th ----, 2026 WL 2416015 (5th Cir. Aug. 19, 2026)................................................................................................................. 13

*Horton v. Goose Creek Independent School District*, 690 F.2d 470 (5th Cir. 1982) .................. 12

*Humphrey v. LeBlanc*, No. 20-CV-233, 2025 WL 2694604 (M.D. La. Sep. 22, 2025) ........................................................................................................................................ 8

*Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) ............................................................................... 6, 7

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................................ 11

*J.D. v. Nagin*, 255 F.R.D. 406 (E.D. La. 2009) .................................................................. 4, 8, 11

*Jack v. Am. Linen Supply Co.*, 498 F.2d 122 (5th Cir. 1974) ....................................................... 4

*Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975)................................................................... 4, 15

*LIA Network v. City of Kerrville*, 163 F.4th 147 (5th Cir. 2025)............................................ 9, 10

*McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337 (S.D. Miss. 2015)........................ 7

*Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011)................................................. 1, 8, 12

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ........................................ 3

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ......................................................... 12, 13

*Neese v. Becerra*, 342 F.R.D. 399 (N.D. Tex. 2022)............................................................ 12, 15

*Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185 (W.D. Tex. 1998)............................................ 3

*Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000) .................................. 1, 2, 4

*Phillips v. Joint Legis. Comm.*, 637 F.2d 1014 (5th Cir. Unit A 1981) ......................................... 3

*Prudhomme v. Government Employees Insurance Co*., No. 21-30157, 2022 WL 510171 (5th Cir. Feb. 21, 2022) ........................................................................................ 13

*Singleton v. Taylor*, No. 2:20-CV-99, 2021 WL 5227063 (M.D. Ala. Nov. 8, 2021) ........................................................................................................................ 3, 5

*Spence v. Am. Airlines, Inc.*, No. 4:23-CV-00552, 2024 WL 3635309 (N.D. Tex. May 22, 2024) ........................................................................................................... 11

*Steward v. Janek*, 315 F.R.D. 472 (W.D. Tex. 2016) .................................................................... 4

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) .................................................................. 7

*U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767 (N.D. Tex. 2022) ................................ 6, 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). .................................................... 5, 6, 7, 15

*Whitaker v. Perdue*, No. 4:06-CV-0140, 2009 WL 10858531 (N.D. Ga. Mar. 30, 2009) ............................................................................................................................ 5

*Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ............................................................................. 14

**Statutes**

Miss. Code. Ann. § 17-31-3 ........................................................................................................ 9

**Other Authorities**

1 Newberg and Rubenstein on Class Actions (6th ed. 2026) ........................................................ 1

Report of Special Master, 1997 WL 291594*, New Jersey v. New York*, No. 120, Orig. 1997, *received at* 520 U.S. 1273 (1997), *and reviewed at* 523 U.S. 767 (1998) .............................................................................................................................. 3

**A. Rule 23(a)(1): Joinder is impracticable.**

Defendants argue that Plaintiffs cannot satisfy Rule 23(a)(1) because they failed to proffer an exact size of the Class and the evidence they offered suggests the Class is too small to show that joinder is impracticable. Defs.' Class Cert. Mem. [26] at 13. But Plaintiffs "need not establish the exact number of potential class members to meet the numerosity requirement." *Morrow v. Washington*, 277 F.R.D. 172, 190 (E.D. Tex. 2011). Rather, "a good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable." 1 Newberg and Rubenstein on Class Actions § 3:13 (6th ed. 2026).

The Fifth Circuit's decision in *Pederson v. Louisiana State University*, 213 F.3d 858 (5th Cir. 2000), is illustrative. *Pederson* involved a putative class action challenging a university's failure to offer female students an equal opportunity to engage in athletics. *Id.* at 864. The court found numerosity satisfied based on estimates of the number of high school female athletes in Louisiana and the number of LSU students drawn from Louisiana; evidence of exact class size was not necessary, especially given the forward-looking nature of the class, *id.* at 868 & n.11.

As in *Pederson*, Plaintiffs offer sufficient evidence to satisfy numerosity. First, the call logs Defendants initially produced to Plaintiffs show they responded to 106 phone calls complaining about solicitation during a six-month period between July 2025 (when the Act went into effect) and March 2026. [26] at 13–14.[1] Just last week, Defendants produced an updated call log documenting that they responded to 54 more calls complaining about solicitations between March

[1] Defendants argue that this evidence is insufficient to support numerosity because Plaintiffs have failed to offer evidence that the calls involved 106 unique individuals. *Id.* at 14. But, to satisfy numerosity, "some evidence" suffices. *See Pederson,* 213 F.3d at 868 (citation omitted). To be sure, the calls may have involved fewer than 106 different individuals. But it is also safe to assume far more than 106 people have engaged in solicitation without leading to law enforcement complaints. The call logs therefore provide additional evidence that bring Plaintiffs' assertions "beyond the mere allegation that the class is too numerous to make joinder practicable which, by itself, is insufficient." *Id.* (citation modified).

and August 2026.[2] Second, about 285 people experiencing homelessness solicit in Jackson each year, based on estimates of homelessness in Jackson and the percentage of homeless individuals who receive most of their incomes through solicitation.[3] Third, the Act requires not only those experiencing homelessness to obtain a solicitation permit: it requires a solicitation permit for anyone who wishes to solicit funds, including "a youth group, a school or athletic team, a church or charity, or any other person or organization." Luckey Decl. [25-1] ¶ 28.

Defendants nevertheless speculate that the Class "may have less than 10" members. [26] at 14. But this suggestion contradicts Defendant Luckey's own admission that "officers regularly encounter persons" soliciting on public streets. [25-1] ¶ 7. And in media reports, Defendant Luckey stated the Capitol Police intended to hire 40 additional officers "to meet the new . . . demand" of enforcing the Act and a companion "anti-homeless" law passed last session restricting public camping.[4] If Defendants' 10-person estimate were anywhere near accurate, there would be no need for dozens of new Capitol Police officers to enforce the Act.

---

[2] *See* Updated Capitol Police Call logs, attached as Ex. B to Pls.' Reply Supp. Class Cert. Mot. [35]. This number will continue to grow, further supporting the impracticability of joinder. *See Pederson*, 213 F.3d at 868 n.11 ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification.").

[3] This estimate should resolve Defendants' concern that Plaintiffs do not "quantify" how many homeless individuals solicit. *See* [26] at 13; *see also* [4] at 10 (explaining that many homeless individuals will at some point solicit to meet their basic needs). Plaintiffs derive this estimate from a recent study concluding that about 1,675 people "cycle in and out of homelessness" in Jackson each year, *see* Molly Minta, *Development desires spur effort to tackle homelessness in Jackson under John Horhn,* Mississippi Today (April 6, 2026), https://mississippitoday.org/2026/04/06/jackson-clutch-homelessness, and a study estimating that, nationally, "17 percent of all homeless persons receive most of their income through" solicitation, *see* Stephen E. Lankenau, *STRONGER THAN DIRT: Public Humiliation and Status Enhancement among Panhandlers*, National Institutes of Health (May 31, 2007), https://pmc.ncbi.nlm.nih.gov/articles/PMC1885227/pdf/nihms19922.pdf, attached as Ex. C and D to [35]

[4] Pam Dankins & Grant McLaughlin, *Jackson and Capitol police are not fully prepared to enforce anti-homeless bills on July 1*, Clarion Ledger (June 30, 2025), https://www.clarionledger.com/story/news/2025/06/30/local-police-are-preparing-to-enforce-anti-homeless-bills-on-july-1/84383852007/, attached as Ex. E to [35].

Regardless, "[t]he proper focus [under Rule 23(a)(1)] is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legis. Comm.*, 637 F.2d 1014, 1022 (5th Cir. Unit A 1981). Defendants' efforts to minimize these factors, *see* [26] at 14–15, are legally and factually inaccurate. First, Defendants are incorrect that Class members are "located in a single geographic location" because they solicit within the Capitol Police's jurisdiction. [26] at 14 (citation omitted). Many Class members, like Plaintiffs, are homeless and transient. *See* Report of Special Master, 1997 WL 291594, at *90, *New Jersey v. New York*, No. 120, Orig. 1997, *received at* 520 U.S. 1273 (1997), *and reviewed at* 523 U.S. 767 (1998) (describing the "transient existence" of people experiencing homelessness). The Fifth Circuit has found that such transience supports finding that joinder is impracticable. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("transient nature of employment in the gambling business" supported numerosity because class members were likely "geographically dispersed and unavailable for joinder"); *see also Singleton v. Taylor*, No. 2:20-CV-99, 2021 WL 5227063, at *4 (M.D. Ala. Nov. 8, 2021) ("[W]here the plaintiffs are necessarily indigent and likely homeless, the class action mechanism provides stability, protection against mootness, and ensures that the action can continue should a named plaintiff go missing. That is value enough for class certification.").

Defendants next argue that the forward-looking declaratory and injunctive relief sought do not support impracticability of joinder. [26] at 14. But "in certifying a class seeking only injunctive relief . . . the numerosity requirement may be fulfilled even when the class is small because the benefits to be gained not only inure to the benefit of the known class but also will benefit a future class of indeterminate size." *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 193 (W.D. Tex. 1998). Indeed, the Fifth Circuit has frequently found that joinder is impracticable when class

members are "unnamed" and "unknown" because the plaintiff is seeking forward-looking injunctive relief. *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (per curiam); *see also Pederson*, 213 F.3d at 868 n.11. Defendants' arguments turn this caselaw on its head.

Defendants further assert that the Fifth Circuit has "rejected the notion that civil-rights class actions deserve[] relaxed treatment under Rule 23(a)." [26] at 14–15. But that is not an accurate representation of Fifth Circuit precedent. In *Jones v. Diamond*, the Fifth Circuit explicitly held that "Rule 23(a) must be read liberally in the context of civil rights suits" and that the "general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." 519 F.2d 1090, 1099, 1100 (5th Cir. 1975), *abrogated on other grounds*, *Gardner v. Westinghouse Broad Co.*, 437 U.S. 478 (1978) (emphasis added). *Jones* has not been overruled for this proposition and binds the Court. In fact, district courts in the Fifth Circuit continue to cite *Jones* for this very proposition. *See e.g.*, *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009). Nor does the Fifth Circuit decision that Defendants cite for the opposite proposition support their argument. *See Bradford v. Sears, Roebuck and Co.*, 673 F.2d 792, 797 (5th Cir. 1982) ("Rule 23(a) must be read liberally in the context of civil rights suits").

Finally, Defendants argue that Plaintiffs have cited no authority that joinder is impracticable if class members face poverty or other barriers to filing individual lawsuits. But Plaintiffs' opening brief citied multiple cases for this very proposition. Pls.' Class Cert. Mem. [4] at 11–12. Poverty is a consideration supporting impracticability of joinder. *See, e.g.*, *Steward v. Janek*, 315 F.R.D. 472, 480 (W.D. Tex. 2016) (numerosity satisfied where "some class members, because of their poverty . . . , face barriers to obtaining counsel or otherwise vindicating their interests").

**B. Rule 23(a)(2): The proposed class shares common questions of law and fact.**

Defendants argue that commonality is not satisfied because Plaintiffs' common questions of law and fact are no different from what the Supreme Court found insufficient in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). [26] at 6, 15–18. Defendants are incorrect.

*Wal-Mart* involved "one of the most expansive class actions ever." 564 U.S. at 342. The three named plaintiffs alleged that Wal-Mart discriminated against women in pay and promotion decisions. *Id.* at 343. The Court found that plaintiffs could not establish commonality because managers had discretion in their 3,400 stores about how to make those decisions. *Id.* at 359. Plaintiffs could not bring a class action to resolve whether "literally millions of employment decisions" violated Title VII because plaintiffs produced no evidence of a general policy serving as the "glue holding" Plaintiffs' discrimination claims together. *Id.* at 352. "What matters to class certification," the Court explained, is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation modified).

By contrast, Plaintiffs have satisfied commonality because they challenge a uniform policy—the Safe Solicitation Act—that they allege violates the First and Fourteenth Amendments on its face. "An injunctive, constitutional challenge to a statute is perhaps the quintessential example of" a claim that satisfies commonality. *Antrim v. Carr*, No. 19-CV-0396, 2023 WL 8627789, at *4 (E.D. Wis. Dec. 13, 2023); *see also Singleton*, 2021 WL 5227063 at *3 (commonality satisfied where plaintiffs brought facial challenge to solicitation statutes). "Individualized factual inquiry is not required" in a facial challenge and the constitutional "issues are susceptible to class-wide proof." *See Whitaker v. Perdue*, No. 4:06-CV-0140, 2009 WL 10858531, at *4 (N.D. Ga. Mar. 30, 2009).

The same is true for Plaintiffs' as-applied challenge to the Act. Defendant Luckey concedes that he applies the Act in a "uniform" manner and applies "the same permit process" for everyone

that wishes to solicit. *See* [25-1] ¶¶ 28, 36. Unlike in *Wal-Mart*, evaluating whether the Act is unconstitutional on its face and as Defendants apply the Act to the Class will resolve Plaintiffs' "claims in one stroke." 564 U.S. at 350; *see also U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 779 (N.D. Tex. 2022) (commonality satisfied where Plaintiffs suffered the same "serious injury of infringement" of their First Amendment rights under defendant's "consistent" policy).

Drilling into Plaintiffs' common questions of law and fact only reinforces that conclusion. Plaintiffs identify five questions of law under the First and Fourteenth Amendments and seven common issues of fact related to the Act, the answers to which will help to resolve Plaintiffs' First and Fourteenth Amendment claims. [4] at 14–15. "Even a single common question" will do. *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016); *see also Wal-Mart*, 564 U.S. at 359.

Turning first to Plaintiffs' common questions of law, Plaintiffs allege that the Act infringes on constitutionally protected speech under the First and Fourteenth Amendments. An answer to the common question of whether Defendants can meet their burden to justify the speech restrictions will drive resolution of their First Amendment challenge to the Act. Plaintiffs also allege that Defendants charge a uniform $25 licensing fee for solicitation permits. An answer to the common question of whether Defendants can justify the application fee will also drive resolution of their First Amendment challenge to those fees. Plaintiffs also allege that the Act is overbroad under the First Amendment and void for vagueness under the Due Process Clause. This Court's answer to the common questions of whether the Act is overbroad and whether it is void for vagueness will resolve the same legal questions for all Class members.

As to Plaintiffs' common questions of fact, answers to the questions related to the permitting process, *see* [4] at 14, will drive resolution of whether the Act is an unconstitutional prior restraint on speech. *See* Complaint [1] at ¶ 107 (alleging the Act is an unconstitutional prior

restraint on speech because it lacks time limits, gives Defendants unbridled discretion, charges unnecessary fees, and violates Plaintiffs' rights to engage in anonymous and spontaneous speech).

Thus, unlike in *Wal-Mart*, the answers to Plaintiffs' commons questions of law and fact will serve as the "glue" uniting the Class's claims and will "drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350, 352 (citation modified). If Class members brought these claims individually, each case "would require proof of the same material and substantive facts." *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337, 339 (S.D. Miss. 2015). In these circumstances, a class action furthers judicial economy.

**C. Rule 23(a)(3): Plaintiffs' claims are typical of the Class.**

Defendants argue that factual differences between the named Plaintiffs and Class members defeat typicality. In the Fifth Circuit, however, "[i]f the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023); *see also Ibe*, 836 F.3d at 528–29 ("The typicality inquiry rests . . . on the similarity of legal and remedial theories behind [named and unnamed class members'] claims." (citation omitted)). "[T]he test is whether [a plaintiff's] *claims* are typical, not whether she is." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

The purported factual differences between Plaintiffs and Class members that Defendants identify do not defeat typicality because Plaintiffs and Class members' claims share the same legal and remedial theories and arise from a similar course of conduct. First, as to legal and remedial theories, Plaintiffs and the putative Class allege that the Safe Solicitation Act, facially and as applied to the Class, (1) violates the First Amendment as a restriction and prior restraint on speech that chills their protected expression, and (2) violates the Fourteenth Amendment as a vague permitting scheme that deprives them of due process. *See* [1] ¶¶ 102–12. They allege the Act chills

their protected speech, *see id.* ¶ 6, and seek declaratory and injunctive relief, *see id.* at 21. Plaintiffs and every Class member therefore allege the same constitutional violations and injuries that are redressable by the same forward-looking relief. This "complete identity of claims" is more than sufficient to satisfy typicality. *See Angell*, 67 F.4th at 736 ("A complete identity of claims is not required; rather, the critical inquiry is whether the named plaintiff's claims have the same essential characteristics of those of the putative class." (citation modified)).

Second, as to course of conduct, every member of the Class "solicit[s]" within the meaning of the Act and is therefore subject to the same speech restrictions, permitting requirement, and enforcement policies. *See* [1] ¶¶ 75–76 (class definition). Defendant Luckey has admitted that the Capitol Police's course of conduct in enforcing the Act and implementing the permitting requirement is "uniform" as to all class members. *See* [25-1] ¶ 36 ("The agency adopted a uniform [permitting] procedure . . . ."); *id.* ¶ 28 ("Capitol Police apply the same permit process without regard to whether the applicant is an individual who is homeless, a youth group, a school or athletic team, a church or charity, or any other person or organization."). Typicality is satisfied because the basis of Defendants' liability "is not dependent upon [] individual circumstances" of Class members, but rather on Defendants' policies. *See Humphrey v. LeBlanc*, No. 20-CV-233, 2025 WL 2694604, at *42–43 (M.D. La. Sep. 22, 2025) (citation modified).[5] As Defendants concede, those policies are applied in the exact same way to every Class member. *See* [25-1] ¶¶ 28, 36.

Nevertheless, Defendants argue that four purported factual differences between named and unnamed plaintiffs defeat typicality. *See* [26] at 18–21. But Defendants do not explain why any of

[5] *See also Morrow*, 277 F.R.D. at 194 (finding typicality satisfied where "the rules of the interdiction program and the general treatment of individuals stopped as a result of the interdiction program are the same for each stop, including the stops of the proposed class representatives"); *J.D.*, 255 F.R.D. at 415 (finding typicality satisfied where "[e]ach member of the class is or will be detained at [detention facility] for some period of time and will be subjected to the same conditions, rules, and policies").

those factual differences matter for proving the class claims. Their arguments on typicality should be rejected for that reason alone. *See Angell*, 67 F.4th at 737 (rejecting defendant's "speculation" that named plaintiffs' injuries and claims turned on certain factual differences, where defendant "provide[d] no concrete examples for why this might be"). In any event, the purported factual differences have no bearing on the class claims and therefore do not defeat typicality.

First, Defendants argue Plaintiffs cannot satisfy typicality because the proposed Class encompasses not only solicitors experiencing homelessness, but "all solicitors within defendants' jurisdiction," including those requesting donations for charities or sales transactions. [26] at 18. But Plaintiffs' and Class members' claims coincide regardless of whether an individual solicitor is requesting charitable donations or commercial exchanges, because the Act restricts—and Defendants do not dispute that the First Amendment protects, *see* [26] at 16–21—those forms of expression. *See* Miss. Code. Ann. § 17-31-3(b) (defining "solicitation"); *see also LIA Network v. City of Kerrville*, 163 F.4th 147, 164–65 (5th Cir. 2025) (applying First Amendment scrutiny to ordinance provision restricting both charitable and commercial solicitation).

Second, Defendants assert that Plaintiffs cannot satisfy typicality because some Class members are "less restrained than Plaintiffs" when soliciting and remain in the roadway after a light has turned green. [26] at 20. But Plaintiffs do not dispute that Defendants can use existing traffic laws to ensure that traffic is not impeded; Defendants' use of such traffic laws is not the subject of Plaintiffs' claims and does not inform the typicality inquiry. Typicality is satisfied because Plaintiffs allege that the permitting scheme is a prior restraint on speech and violates the Fourteenth Amendment because it gives too much discretion to Defendants in making permitting decisions, claims shared by all Class members.

Third, Defendants argue that, because Plaintiffs have not submitted permit applications, their claims are not typical of the claims of Class members who "may face problems with discretion, deadlines, or an appeal process" in connection with their permit applications, *see* [26] at 19, or who are able or willing to get a permit, *id.* at 20. But these arguments incorrectly assume that willingness to comply with a prior restraint is a prerequisite to challenging it. To the contrary, the Supreme Court has "long held that" a person subject to "a licensing statute" "may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988). Here, regardless of whether Plaintiffs and Class members have never "tried to get a permit" or have "obtained many permits without apparent complaint," [26] at 19–20, they are all "subject to" the Act's permitting system, *City of Lakewood*, 486 U.S. at 755. They are all therefore able to bring the same constitutional claims challenging that system.

Finally, Defendants argue that some Class members, unlike Plaintiffs, "may be fine" with the permitting system and "could think that they benefit from" it. [26] at 20. But the inquiry into the constitutional validity of a prior restraint does not look to the speaker's opinion of the speech restriction; it asks how the restriction operates and whether the government can justify it under the appropriate level of scrutiny. *See LIA Network*, 163 F.4th at 161 ("[T]he government bears the ultimate burden to show the constitutionality of a speech-restrictive law.").

**D. Rule 23(a)(4): Plaintiffs will adequately represent the Class.**

Defendants argue that intraclass conflicts of interest defeat Plaintiffs' adequacy of representation. [26] at 21–24. But Defendants fail to engage with the caselaw cited in Plaintiffs' opening brief finding no conflict of interest when plaintiffs challenge a policy that is applied uniformly to all class members and seek the same declaratory and injunctive relief as class

members. *See, e.g.*, *J.D.*, 255 F.R.D. at 416 (finding no conflict of interest where class claims challenged defendant's "practices and policies . . . as a whole" and plaintiffs sought "the same remedies, namely declaratory and injunctive relief, as the class as a whole"). Ignoring this caselaw, Defendants overlook the principle in this Circuit that unity in "asserting a common right" against a defendant ensures that "class interests are not antagonistic for representation purposes." *See In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 208 (5th Cir. 1981), *aff'd following remand,* 659 F.2d 1322 (5th Cir. 1981), *cert. denied,* 456 U.S. 998, *and cert. denied,* 456 U.S. 1012 (1982)) (citation omitted).[6]

Here, Plaintiffs and Class members share a common interest in removing the threat of future enforcement of a law that violates their First and Fourteenth Amendment rights. Their constitutional injuries are identical to those of every class member, because the Class "as a whole" is subject to Defendants' uniform enforcement of the Act. *See J.D.*, 255 F.R.D. at 416. And the declaratory and injunctive relief they seek will benefit the entire Class "as a whole": it will prevent those constitutional injuries from occurring in the future. *See id.* Plaintiffs' and Class members' interests in the litigation are therefore sufficiently aligned, and no conflict of interest exists.

Nevertheless, Defendants argue that purported factual differences between Plaintiffs and Class members create conflicts of interest. But the differences they suggest—the same ones they incorrectly argue defeat typicality—"are not the kind of differences that create a conflict of interests" because they "do not affect the alignment of the class representatives' interests with the

---

[6] *See also, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 283 (W.D. Tex. 2007) (finding "no apparent conflicts . . . which undermine adequate representation" where "all class members share[d] the same interest in determining whether [defendant] in fact discriminated on the basis of race or national origin and, if so, in remedying this wrong"); *Spence v. Am. Airlines, Inc.*, No. 4:23-CV-00552, 2024 WL 3635309, at *8 (N.D. Tex. May 22, 2024) ("The shared legal position, objective in establishing Defendants' liability, and ultimate relief sought eliminate any conflicts between Plaintiff's individual interests and the interests of the class.").

interest of the class." *See Morrow*, 277 F.R.D. at 196; *see also Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617 (5th Cir. 1983) (concluding that "congruence" of named and unnamed plaintiffs' factual circumstances is not required to satisfy adequacy, commonality, and typicality). First, Defendants argue that Plaintiffs cannot adequately represent the interests of Class members "who have faced problems in getting permits," because those Class members have "different injuries." [26] at 22. But, as explained above, *see supra*, Part I(C), Plaintiffs and Class members share identical constitutional injuries because they are all subject to a prior restraint on speech that violates their First Amendment rights. *See City of Lakewood*, 486 U.S. at 755–56. The prior restraint "has an immediate and irreversible sanction" for Class members who obtain permits as well as Plaintiffs who are unable to do so: it "freezes [speech] at least for the time." *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

Second, Defendants speculate that Plaintiffs cannot adequately represent the interests of Class members who may approve of the permitting system. [26] at 22–23. But such differences of opinion about the Act—whether hypothetical or real—do not amount to a conflict of interest that defeats adequacy. In "civil rights cases . . . , which by nature can involve polarizing issues[,] . . . courts have been reluctant to find the class representatives inadequate even if some class members have an explicit desire to maintain the status quo." *Neese v. Becerra*, 342 F.R.D. 399, 410 (N.D. Tex. 2022) (citation modified). For instance, in *Horton v. Goose Creek Independent School District*, the Fifth Circuit held that the named plaintiffs were adequate class representatives despite the "very real possibility" that "some class members support[ed]" the challenged canine search policy. 690 F.2d 470, 485, 487–88 (5th Cir. 1982). The court reasoned that "in any conceivable case, some of the members of the class will wish to assert their rights while others will not wish to do so," *id.* at 486 (citation modified), and that where the "defendant vigorously oppose[s]

certification"—as Defendants have done in this case—the court can "rely on the defendant" to represent the views of dissenting class members, *id.* at 487–88. Here, like in *Horton*, the potential for a diversity of opinions about the Act's benefits does not prevent Plaintiffs from adequately representing the Class.[7]

Third, Defendants assert that Plaintiffs cannot represent Class members who solicit less carefully than Plaintiffs do and need "more extensive relief" than what Plaintiffs have requested in their Complaint. [26] at 23. But Defendants do not specify what relief they are referring to or explain how that relief implicates a conflict of interest. Because Defendants offer "no meaningful response beyond speculating" that Class members' relief turns on how carefully they solicit, they do not identify a cognizable conflict. *See Hamm v. Ochsner-Acadia, L.L.C.*, No. 25-30603, --- F.4th ----, 2026 WL 2416015, at *5 (5th Cir. Aug. 19, 2026) (no conflict sufficient to defeat adequacy where defendant offered only speculation that named plaintiff was subject to unique, "unspecified" defenses).

Finally, Defendants' speculation that the daily cap on number of permits "implicates inherent conflicts," [26] at 22, fails for the same reason. *See Hamm*, 2026 WL 2416015, at *5.

**E. Rule 23(b)(2): Defendants act uniformly toward members of the proposed Class, and declaratory and injunctive relief on behalf of the Class is appropriate.**

[7] *Prudhomme v. Government Employees Insurance Co.*, cited by Defendants, [26] at 23, is distinguishable. No. 21-30157, 2022 WL 510171 (5th Cir. Feb. 21, 2022). In that case, the challenged car insurance policy resulted in underpayments for named plaintiffs but overpayments for some class members. *Id.* at *1. This difference defeated adequacy because it "undermined [named plaintiffs'] class-wide theory of liability"—class members who received overpayments suffered no injury, but rather "benefited from" the challenged policy. *Id.* Here, by contrast, that some Class members "could think that they benefit from" the permit system, [26] at 23, does not undermine Plaintiffs' class-wide theory of liability. Plaintiffs and all Class members are all subject to a prior restraint that unconstitutionally "freezes" their speech, *Nebraska Press Ass'n v*, 427 U.S. at 559, and enjoining the prior restraint would relieve their constitutional injury, including the $25 price tag on their speech.

Defendants argue the Class does not satisfy Rule 23(b)(2) because enjoining enforcement of the Act will not help Class members who may differ from Plaintiffs. [26] at 25–26. But their argument amounts to mere repetition of the litany of purported factual differences addressed above, *supra* Part I(C)–(D). As they were for typicality and adequacy, those differences are likewise inconsequential under Rule 23(b)(2). The inquiry under Rule 23(b)(2) focuses on the uniformity of Defendants' behavior toward the Class. *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) ("By its terms, Rule 23(b)(2) looks to whether the *defendant's* conduct applies 'generally to the class.'").

In *Yates*, the Fifth Circuit considered a proposed class and subclasses of prison inmates exposed to high temperatures in prison housing areas. The court certified the class under Rule 23(b)(2), reasoning that all class members, "regardless of age or health, are subject to the *same* policy," "have the *same* [remedies] available to them," and "are (allegedly) harmed in essentially the *same* way—*i.e.*, by exposure to a substantial risk of serious harm because of exposure to excessive heat." *Id.* at 368. Based on these facts, the court concluded that "the same action/inaction by Defendants [was] the source of any injury for the entire" class.

Here, like in *Yates*, "there is no serious question that Defendants have engaged in common behavior that applies generally to the class[]" and that class certification is appropriate under Rule 23(b)(2). *Id.* at 367–68 (citation modified). All Class members, regardless of their personal characteristics, are subject to Defendants' uniform permitting system adopted pursuant to the Act. *See* [25-1] ¶¶ 28, 36. All Class members are harmed in the same way: the permitting system is a prior restraint that violates their constitutional rights to free speech and due process. *See City of Lakewood* 486 U.S. at 755–56 (permit application not necessary to challenge prior restraint); *see also U.S. Navy SEALs 1-26*, 594 F. Supp. 3d at 779, 783 (certifying (b)(2) class and finding plaintiffs and class members were "harmed in essentially the same way" because they were subject

to defendant's uniform vaccine policies that allegedly violated their constitutional rights). And all Class members will receive relief from these violations from a single injunction prohibiting Defendants from enforcing the Act in the future, as well as a single declaration declaring the Act unconstitutional. *See Wal-Mart*, 564 U.S. at 361–62 (certification under (b)(2) justified when the declaratory and injunctive relief sought "affect the entire class at once"). Without such relief from this Court, each Class member faces ongoing threats of prosecution if they do not obtain a permit. Plaintiffs' claims are therefore appropriate for class-wide resolution under Rule 23(b)(2). *See U.S. Navy SEALs 1-26*, 594 F. Supp. 3d at 783 (certifying (b)(2) class, reasoning "[e]ven though [class members'] personal circumstances may factually differ in small ways, the threat" they face "is the same"—comply with defendant's policy or be penalized).

Defendants' focus on purported factual differences between named and unnamed plaintiffs is therefore misplaced. Even if, as Defendants say, [26] at 26, Class members' permit application history, willingness to get a permit, carefulness when soliciting, or opinions of the Act may vary, that variation is immaterial under Rule 23(b)(2). Such differences affect neither the class-wide application of the Act and Defendants' permitting policy, nor the class-wide nature of the injunctive and declaratory relief sought. *See Neese*, 342 F.R.D. at 412 (certifying (b)(2) class despite defendants' argument that "some proposed class members disagree with Plaintiffs," because plaintiffs did "not seek individualized relief for any class member" and the relevant statute and challenged regulatory interpretation "appl[ied] to each of the class members"); *see also Jones*, 519 F.2d at 1100 (Rule 23(b)(2) does not require that all class members "desire to challenge the defendant's conduct." (citation modified)).

## CONCLUSION

This Court should grant Plaintiffs' class certification motion.

Dated: September 16, 2026

Respectfully submitted,

/s/ *Miriam Gutman*
Miriam Gutman (GA Bar No. 170768)*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave, Suite 340
Decatur, GA 30030
(470) 728-2920 (tel.)
(404) 221-5857 (fax)
miriam.gutman@splcenter.org

Ellen Degnan (Ala. Bar No. ASB-3244-I12V)*
Micah West (Ala. Bar No. ASB-1842-J82F)*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36130
(334) 314-8976 (tel.)
(334) 956-8215 (fax)
ellen.degnan@splcenter.org
micah.west@splcenter.org

Jacqueline Azis (Fla. Bar No. 101057)*
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Boulevard, Suite 3200
Miami, FL 33131
(727) 463-2110 (tel.)
(786) 237-2949 (fax)
jacqueline.azis@splcenter.org

Kirsten Anderson (Fla. Bar No. 17179)*
SOUTHERN POVERTY LAW CENTER
P.O. Box 10788
Tallahassee, FL 32302
(352) 318-7284 (tel.)
(850) 655-4511 (fax)
kirsten.anderson@splcenter.org

/s/ *Joshua Tom*
Joshua Tom (Miss. Bar No. 105392)
Brendan Hopkins (Miss. Bar No. 106652)
AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI
P.O. Box 1142
Jackson, MS 39225
(601) 354-3408 (tel.)

(601) 355-6465 (fax)
jtom@aclu-ms.org
bhopkins@aclu-ms.org

Cliff Johnson (Miss. Bar No. 9383)
MACARTHUR JUSTICE CENTER
481 Chucky Mullins Drive
University, Mississippi 38677
(662) 915-6863 (tel.)
cliff.johnson@macarthurjustice.org

**Admitted pro hac vice*

**Attorney for Plaintiffs**

**CERTIFICATE OF SERVICE**

Undersigned counsel does hereby certify that on this date, a true and correct copy of the above and foregoing has been filed with the Clerk of the Court via the Court's electronic filing system, and notification of such filing was sent to all counsel of record via same.

Dated: September 16, 2026

/s/ *Miriam Gutman*
Miriam Gutman